**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**LUZ SANTIAGO DE HOYOS, Individually; and,**
**JORGE LUIS RIVERA CAMACHO, Individually; and,**
**LUZ SANTIAGO DE HOYOS and**
**JORGE LUIS RIVERA CAMACHO**
**as CO-PERSONAL REPRESENTATIVES of the**
**ESTATE OF LORENZO SANTIAGO,**

        Plaintiffs,         **CASE NO.: 8:24-cv-2238**

**v.**

**COMMUNITY BEHAVIOR SUPPORTS, INC.;**
**GABMIRE, LLC; AMRA ALISIC; and,**
**KEITH MILES-SMART EARLE,**

        Defendants.

_____/

## COMPLAINT

COMES NOW, Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS

RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and

JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the

ESTATE OF LORENZO SANTIAGO, by and through their undersigned attorney, and sues

Defendant COMMUNITY BEHAVIOR SUPPORTS, INC.  (hereinafter "CBS"); Defendant

GABMIRE, LLC; Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART

EARLE,  for violations of the Americans with Disabilities Act Title III and the wrongful death of

their son that occurred on October 7, 2022; and in support of such states as follows:

## VENUE, JURISDICTION, AND PARTIES

1.     This action is brought pursuant to the laws of the state of Florida and the

Americans with Disabilities Title III which prohibits discrimination in a public accommodation,

and the Civil Rights Act, Title VIII the Fair Housing Act which prohibits discrimination in housing against persons with disabilities.

2.      Defendant GABMIRE, LLC, was a company managed and formed by Elvis Abreu, GABMIRE, LLC, is registered at 6880 46TH AVENUE N., SUITE 240, ST. PETERSBURG, FL 33709.  Defendant GABMIRE, LLC owned property located at 5150 97th Terrace, Pinellas Park, Florida 33782 in Pinellas County, Florida, that operated as the "Farleigh Group Home."  Defendant GABMIRE, LLC is vicariously liable for the actions and inactions of its employees that contributed to violations of the laws set forth herein.

3.      Defendant AMRA ALISIC was a co-owner and/or manager of GABMIRE, LLC, and upon information and belief lived in Pinellas County, Florida.

4.      Defendant KEITH MILES-SMART EARLE, was a co-owner and/or manager of GABMIRE, LLC, and upon information and belief lived in Pinellas County, Florida.

5.      Defendant CBS is a for profit corporation that owns and operates a facility that provides daily living skill training and behavioral support for intellectually/mentally disabled persons and is located at 4717 66th Street N, Saint Petersburg, Florida 33709 in Pinellas County. Defendant CBS is vicariously liable for the actions and inactions of its employees that contributed to violations of the laws set forth herein.

6.      Plaintiff LUZ SANTIAGO DE HOYOS, was a resident of Orange County, Florida, at the time of the subject incident.

7.       Plaintiff JORGE LUIS RIVERA CAMACHO, was a resident of Orange County, Florida, at the time of the subject incident.

8.      Decedent, LORENZO SANTIAGO, was living at a residential facility for mentally disabled adults called the Farleigh IB Home, and it was located at 5150 97th Terrace, Pinellas Park, Florida 33782 in Pinellas County, Florida.

9.      The tragic death and all of the acts or omissions giving rise to this action occurred in Pinellas County, Florida.

10.     Venue is proper in the Tampa Division of the Middle District of Florida, as the incident arises out of Pinellas County, and the Defendant operates a business and/or resides and/or works in Pinellas County, Florida.

11.     This is an action seeking damages in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs, interest, and attorney's fees.

## FACTUAL ALLEGATIONS

12.     On September 30, 2022, Lorenzo Rivera Santiago was 19 years old and was a mentally disabled and intellectually disabled person who had been diagnosed as autistic, having a mood disorder, with PTSD, and an intellectual disability.  Lorenzo enjoyed watching 101 Dalmatians, had a child-like mindset, and at the time only weight 150 pounds and was 5'5" tall.

13.     Lorenzo lived at a home for mentally disabled and/or intellectually disabled persons, namely, the Farleigh IB Home located at: 5150 97th Terrace, Pinellas Park, Florida 33782 in a house and on property that was owed by GABMIRE, LLC.   The Farleigh Home is a public accommodation pursuant to the ADA Title III.  As aforementioned, GABMIRE, LLC was co-owned and/or co-managed by Alvis Abreu and/or Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE.

14.     During the day, Lorenzo was transported to Defendant CBS to attend his daily living skill training and behavioral support for intellectually/mentally disabled persons which is

located at 4717 66th Street N, Saint Petersburg, Florida 33709. CBS is owned by Elvis Badnjevic. CBS is a public accommodation within the meaning of the ADA Title III.

15.     Lorenzo was transported from the Farleigh IB Home to CBS via a transport van. Upon information and belief Trowbridge A.G., LLC, owned the transport van that transported Lorenzo from the Farleigh Home to CBS.  Elvis Abreu is President of Trowbridge A.G., LLC, Defendant AMRA ALISIC is the manager of Trowbridge A.G., LLC; and, Defendant KEITH MILES-SMART EARLE is the Vice President of Trowbridge A.G., LLC.

16.     Due to Lorenzo's mental and intellectual disabilities there was a specific protocol put in place for: 1) loading Lorenzo into the van at the Farleigh Home, 2) the time period during the transport, and 3) unloading Lorenzo at the CBS property and for his entry into the CBS facility. Lorenzo often became agitated and aggressive during all phases of his transition and transportation from the Farleigh Home to the CBS facility.  Defendant CBS, Defendant GABMIRE, LLC; Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE, (collectively "Defendants") had a duty to ensure the health and safety of Lorenzo Santiago and a duty to ensure that he was treated with equality and dignity and not discriminated against because of his disability.

17.     Defendant GABMIRE, LLC owned the property on which the Farleigh Home was operating; and had actual knowledge that the home was being used to provide a home and care for mentally disabled persons.  Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE, did not take any actions to ensure that the property and home were reasonably safe for its tenants, or was compliant with ADA standards or the Fair Housing Act.

18.     The property owned by Defendant GABMIRE, LLC, had frequent and numerous calls to the police department for crime, deaths on the property, issues pertaining to mentally ill

residents, and for issues regarding physical violence and battery against its mentally disabled residents placing Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE, on actual notice of violations of the ADA and Fair Housing Act, and of a need to undertake additional safety measures and security for the safety of its residents. Defendant GABMIRE was allowing the Farleigh Home business to operate on its property knowing that its employees had a history of failing to have adequate training and certification on the use of restraint techniques on mentally ill persons, that it had a history of abusing and physically injuring residents while applying restraint techniques and/or failing to properly respond to medical emergencies that resulted in serious bodily injury and/or death.

19.     For example, on or about December 14, 2018, a former employee of Farleigh House was terminated for using improper and abusive restraint techniques on a client and repeatedly pushing his face into a carpet, while a second employee slept through the incident, and a third employee failed to intervene because he/she was not trained and certified on proper restraint techniques.  The incident resulted in the Agency for Persons with Disabilities finding a violation of Florida Statute 393.13 and Florida Administrative Codes on March 4, 2019.  The agency also found the Farleigh House in violation of administrative code for failure to properly administer medications and for failure to repair a broken window that a client broke with his head.  The Farleigh Home has a pattern and practice of failing to properly supervisor and monitor its clients and to protect their health and safety, of using improper restraint techniques, and of abusive behavior toward disabled persons.  In 2020 staff members restrained a client resulting in a gash on his body that required stitches.  In 2021 staff members used a barr procedure on another client that also resulted in a gash on his body that required stitches.   Defendants also have a history of residents dying while in the care of the Farleigh Home, including a resident that died in 2021 and

two residents that died in 2022.  As aforementioned Elvis Badnjevic is the common owner of the above Farleigh Home business and the owner of GABMIRE, LLC which owns the property and the home, and as such had actual prior notice and knowledge of the dangers posed to decedent Lorenzo Santiago; and as such, his death was forseeable.  More specifically, the Farleigh House had prior issues with Lorenzo Santiago that made the incident resulting in his death forseeable.

20.     On at least two prior occasions the Kenneth City Police Department responded to incidents involving Lorenzo Santiago at the Farleigh Home.  On June 8, 2022, Kenneth City Police Department responded to the Farleigh Home for an incident in which Lorenzo was physically restrained by four staff members and transported to the hospital by medics as a new medication was making him aggressive.  During that incident, the transport company Sunstar administered Versed to calm him down prior to transport, and then transported him to the hospital.  During that incident Lorenzo suffered physical abuse including a laceration above his eye and caused bleeding from his mouth.  Lorenzo had an old behavioral plan implemented in November 2020 and last updated on July 26, 2021; Defendants failed to update and/or modify his behavioral plan in light of the incident which led to his injury and his increased level of aggression due to his change in medication.  On September 19, 2022, Kenneth City Police Department responded to the Farleigh Home again because Lorenzo Santiago was being aggressive and they restrained him a straight-jacket, and he was transported to the hospital by Sunstar.  Once again, Defendants failed to modify his behavioral plan and failed to even follow the prior behavioral plan that was developed for Lorenzo Santiago.

21.     On September 30, 2022, Lorenzo was being abused and physically restrained at the Farleigh Home.On September 30, 2022, a van owned by Trowbridge picked Lorenzo up at the Farleigh Home when he was experiencing another episode of aggression.  The driver of the van

Keith stated that he picked Lorenzo up at Farleigh Home to transport him to the Community Behavior Support Center located at: 4717 66th Street N, Kenneth City, FL 33709.  The Community Behavior Support Center is owned and/or operated by Defendant CBS.  Upon arrival to Farleigh Home, an employee named Keith noticed that Lorenzo was already being combative and had been placed in physical restraints or shackles on his hands and feet, and he was being physically restrained by Farleigh Group Home employees Frederick Davis and Antwan Datson.  Despite requiring physical intervention and the use of handcuffs on his feet and hands, the other Farleigh Home employees, and Keith failed to call Kenneth Police Department and/or Sunstar for his safety and to arrange his medical transport.  The employees also did not call 911 to alert them to an emergency.  In the instant matter Farleigh House employees failed to follow proper procedures developed for the health and safety of our client Lorenzo Santiago.

22.    According to Lorenzo's July 6, 2021, Behavioral Plan, Lorenzo was supposed to be physically restrained by a minimum of three employees; however, there were only two employees restraining him that day. A Farleigh Home employee named James stated during an interview with police that prior to transport, Lorenzo had been placed on a mat and a bar procedure had been used to place the physical restraints.  Farleigh Home employees and/or Trowbridge employees failed to place him in a straight jacket to avoid injury to himself and others as they had in the past, alert police, seek medical transport, sedate him prior to transport, and/or call 911. Instead, the employees proceeded to load Lorenzo into the van while in a highly agitated state and he was not fully restrained.  As they approached the van Lorenzo became increasingly combative because there were lights from police sirens at a neighbor's house.

23.    Farleigh Home employees Frederick and Antwan placed Lorenzo in the back seat of the van in between them during transport and pressed their bodies against him to restrain him

during transport because he was combative, and the restraints were not tight enough to adequately restrain him. Lorenzo's behavioral plan clearly stated that nobody should sit next to him in the back seat during transports because it would cause him to become aggressive. Frederick and Antwan admitted that the physically held him down during the transport. Keith and the passenger in the van did not intervene to stop the physical abuse and improper restraint techniques. The physical restraints and compression of Lorenzo likely caused positional asphyxia. The driver of the van Keith stated that during transport everything was very loud in the back seat and then all of the sudden there was silence about two minutes prior to arrival at the Community Behavior Support Center owned by Defendant CBS. Despite the sudden silence, Keith, Aaron Moultrie another passenger in the van, Antwan, and Frederick did not stop the fan, attempt medical intervention or resuscitation or call 911. Keith said that upon arrival he got out to open the door of the van and found Lorenzo unconscious. Passenger Aaron Moultrie also stated that his skin color was pale. He stated that they removed Lorenzo from the van and placed him onto the property owned by Defendant CBS and tried to revive him and perform CPR, and they attempted to contact 911 and there was no answer. 911 recorded three calls that came in from that address but when they answered the caller would hang up and when they attempted to call back nobody would answer. Despite the fact that at the time of his arrival at Community Behavior Supports, Inc. Lorenzo was unconscious and suffering a clear medical emergency, no staff member attempted CPR and/or resuscitative measures, informed 911 or EMS, and/or reported the incident to law enforcement.

24.     At the time of his arrival at CBS Lorenzo was unconscious and suffering a clear medical emergency, yet no CBS employee attempted CPR and/or resuscitative measures, informed 911 or EMS, and/or reported the incident to law enforcement. The individuals in the transport van personnel asked CBS employees to call 911 and believed CBS employees did call 911 when they

arrived on the property.  CBS employees did call 911 but then hung up on the 911 operator without providing any information.  Then CBS employees allowed employees in the transport van to remove him from the property in the van, and again alerted no one that he was suffering from a severe medical emergency.

25.     Defendants including Community Behavior Support Center employees failed to wait for 911, medical transport, and an ambulance and instead transported him to St. Petersburg General Hospital in the van. At the hospital it was determined that he was "brain-dead" and required life support to keep him alive.  When his parents observed his body at the hospital, they observed marks and bruises on his body.  Lorenzo experienced conscious pain and suffering from September 30, 2022 until he ultimately succumbed to his injuries and died on October 7, 2022.

26.     Defendant CBS Defendant GABMIRE, LLC; Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE's numerous breaches of the duties owed to decedent Lorenzo Santiago actually and proximately caused his death; and as such, Defendants are liable for damages.

27.     Defendants' individual and collective actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a)     Award compensatory damages to Plaintiffs;

(b)     Award costs of this action to Plaintiffs;

(c)     Award reasonable attorneys' fees and costs to Plaintiffs for violations of the ADA and Civil Rights Act/Fair Housing Act;

(d)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Any and all other and further relief as this Court may deem appropriate.

## COUNT I

## NEGLIGENCE

### Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE

28.     Plaintiff reincorporates paragraphs 1-27 as if fully set forth herein.

29.     On September 30 Plaintiff's decedent Lorenzo Santiago was a business invitee and resident on the Premises of the Farleigh Home, a residential living facility for mentally disabled persons, owned by Defendant GABMIRE, LLC and/or operated and/or managed by Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE.

30.     At all times material hereto Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE, had a duty to maintain a reasonably safe premise for business invitees and to warn against a dangerous condition, and knew or should have known that its failure to properly train and supervise its employees was a dangerous condition existing on the Premises and should have taken reasonable measures to rectify this dangerous condition and ensure that its employees were properly trained and/or supervised.

31.     At all times material hereto Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE operated the business in an unsafe and unreasonable manner that caused Lorenzo Santiago's death.  Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE undertook to provide residential services to disabled persons including Lorenzo Santiago but failed to train and supervise its staff to ensure the safety of disabled residents, failed to implement and/or enforce proper policies and procedures for mentally disabled residents generally and Lorenzo Santiago specifically, failed to develop proper policy and protocol for restraining and/or transporting Lorenzo Santiago, failed to follow the protocol developed for restraining and/or transporting Lorenzo Santiago, failed to properly train and supervise staff and develop proper policies and procedures to prevent discrimination based up on Lorenzo's disability and violations of his ADA rights and Fair Housing Act rights.   By and through Defendants numerous failures it created the known dangerous condition on the property that causes serious bodily injury and death of others on prior occasions, caused serious bodily injury of Lorenzo Santiago on prior occasions, and made the death of Lorenzo Santiago forseeable.

32.     At all times material hereto, Defendant GABMIRE, LLC and/or operated and/or managed by Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH

MILES-SMART EARLE breached the duties owed to Plaintiffs' decedent Lorenzo Santiago by committing one or more of the following negligent acts and/or omissions:

a) Failed to warn against a dangerous condition,

b) Failed to properly train and supervise its employees based on the needs of its disabled residents, failure to properly train staff and supervise staff to ensure proper restraint techniques were used, to ensure proper transportation was arranged from the Farleigh Home to CBS, to abide by ADA and Fair Housing Act standards, to refrain from discriminating against individuals due to their disability, and when to seek medical intervention and dial 911 and how to respond to medical emergencies,

c) Failed to develop proper policies and procedures based on the needs of its disabled residents, proper restraint techniques, to ensure proper transportation was arranged from the Farleigh Home to CBS, to abide by ADA and Fair Housing Act standards, to refrain from discriminating against individuals due to their disability, and when to seek medical intervention and dial 911 and how to respond to medical emergencies,

d) Failed to develop a proper behavioral plan for Lorenzo Santiago;

e) Failed to follow the behavioral plan that was developed for Lorenzo Santiago; including but not limited to ensuring that three individuals were present to restrain him to avoid physical injury and abuse; failed to place him in a straight jacket to avoid injury to himself and others as they had in the past, failed to alert police, failed to seek medical transport, failed to sedate him prior to transport, failed to call 911; failed to leave him alone in the back seat and instead persons sat beside him and compressed his body; physically restrained his body during the transport; failed to use the proper restraint tools and methodologies.

f)  Failed to call 911, failed to administer first aide or render CPR, failed to call police and/or obtain emergency medical services,

g)  Other failures to be identified during the course of discovery.

33.  Defendants' individual and collective actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a)  Award compensatory damages to Plaintiffs;

(b)  Award costs of this action to Plaintiffs;

(c)  Loss of past and future support and services with interest;

(e)  Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)  Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)  Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)  Any and all other and further relief as this Court may deem appropriate.

**COUNT II**
**GROSS NEGLIGENCE- PREMISE LIABILITY**

**Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE**

34.     Plaintiff reincorporates paragraphs 1-27 and 28-33 as if fully set forth herein.

35.     Defendant GABMIRE, LLC; Defendant AMRA ALISIC and/or Defendant KEITH MILES-SMART EARLE's failures as enumerated above were so reckless or wanting in care that it constituted a conscious disregard or indifference to life, safety, or rights of persons exposed to abuse and misconduct at the Farleigh House including but not limited to decedent Lorenzo Santiago.

36.     Namely, Defendants undertook to provide residential services to mentally disabled people who are vulnerable members of society and knew that several mentally disabled persons had suffered abuse, ADA violations, serious bodily injury, and death on the subject property, including several calls for service and medical attention of decedent Lorenzo Santiago prior to his death.  Defendants failures enumerated above were so reckless or wanting in care that it constituted a conscious disregard or indifference to life, safety, or rights of persons including Plaintiffs' decedent.

37.     Defendants' individual and collective actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

        (a)     Award compensatory damages to Plaintiffs;

(b)     Award costs of this action to Plaintiffs;

(c)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Punitive Damages

(i)     Any and all other and further relief as this Court may deem appropriate.

## COUNT III
## NEGLIGENCE
## Defendant COMMUNITY BEHAVIOR SUPPORTS, INC.

38.     Plaintiff reincorporates paragraphs 1-27 as if fully set forth herein.

39.     On September 30 Plaintiff's decedent Lorenzo Santiago was a business invitee and resident on the Premises of Defendant CBS, a for profit corporation that owns and operates a facility that provides daily living skill training and behavioral support for intellectually/mentally disabled persons, owned and/or operated and/or managed by Defendant CBS.

40.     At all times material hereto Defendant CBS, had a duty to maintain a reasonably safe premise for business invitees and to warn against a dangerous condition, and knew or should have known that its failure to properly train and supervise its employees was a dangerous condition

existing on the Premises and should have taken reasonable measures to rectify this dangerous condition and ensure that its employees were properly trained and/or supervised.

41.     At all times material hereto Defendant CBS operated the business in an unsafe and unreasonable manner that caused Lorenzo Santiago's death.  Defendant CBS undertook to operate a facility that provides daily living skill training and behavioral support for intellectually/mentally disabled persons including Lorenzo Santiago but failed to train and supervise its staff to ensure the safety of disabled residents, failed to implement and/or enforce proper policies and procedures for mentally disabled residents generally and Lorenzo Santiago specifically, failed to develop proper policy and protocol for restraining and/or unloading/ transporting Lorenzo Santiago when he arrived to the facility and departed the facility, failed to properly train and supervise staff and develop proper policies and procedures to prevent discrimination based up on Lorenzo's disability and violations of his ADA rights and Fair Housing Act rights.   By and through Defendants numerous failures it created the known dangerous condition that made the death of Lorenzo Santiago forseeable.

42.     At all times material hereto, Defendant CBS breached the duties owed to Plaintiffs' decedent Lorenzo Santiago by committing one or more of the following negligent acts and/or omissions:

a)  Failed to warn against a dangerous condition,

b)  Failed to properly train and supervise its employees based on the needs of its disabled residents, failure to properly train staff and supervise staff to ensure proper restraint techniques were used, to ensure proper transportation was arranged from the Farleigh Home to CBS including unloading and reloading persons into transport vans, to abide by ADA and Fair Housing Act standards, to refrain from discriminating against

individuals due to their disability, and when to seek medical intervention and dial 911 and how to respond to medical emergencies,

c) Failed to develop proper policies and procedures based on the needs of its disabled residents, proper restraint techniques, to ensure proper transportation was arranged from the Farleigh Home to CBS including unloading and reloading persons into transport vans, to abide by ADA and Fair Housing Act standards, to refrain from discriminating against individuals due to their disability, and when to seek medical intervention and dial 911 and how to respond to medical emergencies,

d) Failed to call 911 and inform 911 of a medical emergency; failed to intervene and take control of Lorenzo Santiago when it found he was unconscious and suffering an emergency at the hands of the persons in the transport van, failed to administer first aide or render CPR, failed to call police and/or obtain emergency medical services,

e) Other failures to be identified during the course of discovery.

43.    Defendant CBS' actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

A) Award compensatory damages to Plaintiffs;

B) Award costs of this action to Plaintiffs;

C) Loss of past and future support and services with interest;

D) Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

E) Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

F) Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

G) Any and all other and further relief as this Court may deem appropriate.

## COUNT IV
## GROSS NEGLIGENCE
## Defendant COMMUNITY BEHAVIOR SUPPORTS, INC.

44. Plaintiff reincorporates paragraphs 1-27 and 38-43 as if fully set forth herein.

45. Defendant CBS' failures as enumerated above were so reckless or wanting in care that it constituted a conscious disregard or indifference to life, safety, or rights of persons exposed to abuse and misconduct at the CBS facility including but not limited to decedent Lorenzo Santiago.

46. Namely, Defendants undertook to operate a facility that provides daily living skill training and behavioral support for intellectually/mentally disabled persons who are vulnerable members of society, and when Lorenzo Santiago presented to the property unconscious, and suffering a clear medical emergency Defendant's employees did not call 911, render first aide, attempt CPR, notify police, or seek medical attention for Lorenzo Santiago. Defendant's failures enumerated above were so reckless or wanting in care that it constituted a conscious disregard or indifference to life, safety, or rights of persons including Plaintiffs' decedent.

47.     Defendant CBS' actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a)     Award compensatory damages to Plaintiffs;

(b)     Award costs of this action to Plaintiffs;

(c)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Punitive Damages,

(i)     Any and all other and further relief as this Court may deem appropriate.

**COUNT V**
**ADA TITLE III**
**Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE**

48.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

49.     The Americans with Disabilities Act Title III prohibits discrimination in the form against a person based on his or her disability in public accommodations.

50.     Plaintiff suffered from severe mental disabilities and was an otherwise disabled person within the meaning of the ADA.

51.     Defendant GABMIRE, LLC operates Farleigh House which is a residential facility for mentally disabled persons and is a public accommodation within the meaning of the ADA.

52.     Defendants GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE subjected Plaintiff's decedent to disparate treatment, discrimination, and intentional discrimination based upon his disability and exhibited a reckless indifference to his ADA rights, including but not limited to, Plaintiff's decedent was physically restrained, subjected to the use of restraint devices, and subjected to physical abuse, and denied medical treatment, due to his disability, in violation of the ADA.  Namely, Lorenzo Santiago was acting out due to his disability, Defendant and its employees failed to follow the plan developed for Lorenzo based upon his disability, and instead used abusive techniques and methods of restraint upon his person which caused his severe physical injury and ultimately his death.

53.     As a direct and/or proximate result of Defendant GABMIRE, LLC's intentional discrimination and deliberate indifference to Plaintiff's ADA rights as stated above, Lorenzo Santiago suffered physical abuse and ultimately died.

54.     Defendant GABMIRE, LLC's, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF

LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a)     Award compensatory damages to Plaintiffs;

(b)     Award costs of this action to Plaintiffs;

(c)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Punitive Damages,

(i)  Award reasonable attorneys' fees and costs to Plaintiffs for violations of the ADA;

(j)     Any and all other and further relief as this Court may deem appropriate.

### COUNT VI
### ADA TITLE III
### Defendant COMMUNITY BEHAVIOR SUPPORTS, INC.

55.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

56.     The Americans with Disabilities Act Title III prohibits discrimination in the form against a person based on his or her disability in public accommodations.

57.     Plaintiff suffered from severe mental disabilities and was an otherwise disabled person within the meaning of the ADA.

58.     Defendant CBS owns and operates a facility that provides daily living skill training and behavioral support for intellectually/mentally disabled persons and is a public accommodation within the meaning of the ADA.

59.     Plaintiff's decedent was subjected to disparate treatment, discrimination, and intentional discrimination based upon his disability and exhibited a reckless indifference to his ADA rights, including but not limited to, CBS and its employees failed to intervene to take Plaintiff into their custody when they saw he was unconscious and experience a medical emergency and allowed his body to be removed from his premise without seeking any emergency medical attention, they called 911 and hung up without requesting medical treatment, and did so due to his disability, in violation of the ADA.  Namely, Lorenzo Santiago was acting out due to his disability, Defendant and its employees failed to follow the plan developed for Lorenzo based upon his disability, and instead refused to render medical aide or properly report the incident to medical professionals or law enforcement exacerbating his medical emergency, causing his severe physical injury and ultimately his death.

60.     As a direct and/or proximate result of Defendant CBS's intentional discrimination and deliberate indifference to Plaintiff's ADA rights as stated above, Lorenzo Santiago suffered physical abuse and ultimately died.

61.     Defendant CBS' actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF

LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and the Constitution of the United States of America, for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(d)     Award compensatory damages to Plaintiffs;

(e)     Award costs of this action to Plaintiffs;

(f)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Punitive Damages,

(j)  Award reasonable attorneys' fees and costs to Plaintiffs for violations of the ADA;

(i)     Any and all other and further relief as this Court may deem appropriate.

### COUNT VII
### FAIR HOUSING ACT- Civil Rights Act Title VIII and Florida Statute 760.23
### Defendant GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE

62.     Plaintiff incorporates paragraphs 1 through 27 as if fully stated herein.

63.     The Fair Housing Act, Civil Rights Title VIII and Florida Statute 760.23 which prohibits discrimination against a person based on his or her disability in housing.

64.     Plaintiff suffered from severe mental disabilities and was an otherwise disabled person within the meaning of the Fair Housing Act and Florida Statute 760.23.

65.     Defendant GABMIRE, LLC operates Farleigh House which is a residential housing facility for mentally disabled persons.

66.     Defendants GABMIRE, LLC, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE subjected Plaintiff's decedent was subjected to disparate treatment, discrimination, and intentional discrimination based upon his disability in his housing, including but not limited to, Plaintiff's decedent was physically restrained, subjected to the use of restraint devices, and subjected to physical abuse, and denied medical treatment, due to his disability in his housing and the parking lot adjoining his housing.  Namely, Lorenzo Santiago was acting out due to his disability, Defendant and its employees failed to follow the plan developed for Lorenzo based upon his disability, and instead used abusive techniques and methods of restraint upon his person which caused his severe physical injury and ultimately his death.

67.     As a direct and/or proximate result of Defendant GABMIRE, LLC's intentional discrimination and deliberate indifference to Plaintiff's Fair Housing Rights rights as stated above, Lorenzo Santiago suffered physical abuse and ultimately died.

68.     Defendant GABMIRE LLC's, Defendant AMRA ALISIC; and, Defendant KEITH MILES-SMART EARLE, actions and omissions actually and proximately caused the death of Lorenzo Santiago.  Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the ESTATE OF LORENZO SANTIAGO, are entitled to damages pursuant to Florida's Wrongful Death Act and

the Constitution of the United States of America, for the value of decedent's life and the value of

his loss, and their own loss of consortium, including but not limited to the following:

  (g)  Award compensatory damages to Plaintiffs;

  (h)  Award costs of this action to Plaintiffs;

  (i)  Loss of past and future support and services with interest;

  (e)  Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

  (f)  Any and all medical and/or funeral expenses incurred due to the wrongful
       death of the Decedent;

  (g)  Loss to Plaintiffs of familial relationship with decedent, companionship,
       comfort, support, society, care and sustenance of decedent, and the mental
       pain and suffering from the past date of injury through the future,
       compensation for medical bills as a result of psychological and physical
       injury, as a result of Lorenzo Santiago's death;

  (h)  Punitive Damages,

  (k)  Award reasonable attorneys' fees and costs to Plaintiffs for violations of the
       Fair Housing Act, Civil Rights Title VIII and Florida Statute 760.23;

  (j)  Any and all other and further relief as this Court may deem appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS

RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and

JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the

ESTATE OF LORENZO SANTIAGO, by and through their undersigned attorney, are entitled to

damages pursuant to Florida's Wrongful Death Act, ADA, Constitution of the United States of

America, the Civil Rights Act, Title VIII or Fair Housing Act, Florida Statute 760.23 for the value of decedent's life and the value of his loss, and their own loss of consortium, including but not limited to the following:

(a)     Award compensatory damages to Plaintiffs;

(b)     Award costs of this action to Plaintiffs;

(c)     Award reasonable attorneys' fees and costs to Plaintiffs for violations of the ADA and Civil Rights Act/Fair Housing Act;

(d)     Loss of past and future support and services with interest;

(e)     Loss of earnings and net accumulations to the Estate of Lorenzo Santiago;

(f)     Any and all medical and/or funeral expenses incurred due to the wrongful death of the Decedent;

(g)     Loss to Plaintiffs of familial relationship with decedent, companionship, comfort, support, society, care and sustenance of decedent, and the mental pain and suffering from the past date of injury through the future, compensation for medical bills as a result of psychological and physical injury, as a result of Lorenzo Santiago's death;

(h)     Punitive damages wherein allowed under the law as enumerated in the Counts above,

(i)     Any and all other and further relief as this Court may deem appropriate.

## **TRIAL BY JURY**

WHEREFORE, Plaintiffs LUZ SANTIAGO DE HOYOS, Individually; and, JORGE LUIS RIVERA CAMACHO, Individually; and, LUZ SANTIAGO DE HOYOS and JORGE LUIS RIVERA CAMACHO as CO-PERSONAL REPRESENTATIVES of the

ESTATE OF LORENZO SANTIAGO, hereby demand a trial by jury on all issues so triable.

DATED: September 23, 2024.

Respectfully Submitted,

 /s/Jasmine Rand
**Jasmine Rand, Esquire**
FBN: 0077047
**RAND LAW, L.L.C.**
2525 Ponce de Leon Blvd., Ste. 300
Miami, Florida 33134
(305) 906-6400 Telephone
(305) 503-9235 Facsimile
*Attorney for Plaintiffs*